Eastern District of Kentucky
F I L E D
JUN 2 2 2018
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

FRED WILLIAMS,

    Plaintiff,

v.

3M COMPANY, *et al.*,

    Defendants.

NO. 7:18-CV-63-KKC

OPINION

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff Fred Williams's Motion to Remand. (DE 7.) The Court previously entered an Order granting Williams's motion and remanding this case to Pike Circuit Court. The Court's reasons for remanding this case are explained below.

## I. Background

Plaintiff Fred Williams alleges that he contracted coal workers' pneumoconiosis and/or silicosis (and other injuries) due to his use of allegedly defective respiratory protective equipment manufactured by Defendant 3M, a citizen of Delaware and Minnesota.[1] When he originally commenced this suit, Williams also alleged that Mine Service Company ("MSC") and Kentucky Mine Supply Company ("KMSC") were liable because they knew or should have known that the 3M respirators they sold were defective or unreasonably dangerous when used in a coal mine. Both MSC and KMSC, collectively the Supplier Defendants, are Kentucky citizens. Williams also named as Defendants Judith Erickson, Director of the

---

[1] Williams also alleged that two other Defendants—Mine Safety Appliances Company ("MSA Co.") and Mine Safety Appliances Company LLC ("MSA LLC")—are liable for manufacturing defective respirators. MSA Co. is a defunct Pennsylvania corporation which has merged with MSA LLC. Williams dismissed his claims against MSA Co. on May 23, 2018 although that Agreed Order did not specify whether claims were dismissed against MSA LLC. Williams, however, does not appear to argue that either MSA remains a party to this action.

1

Division of Workers' Compensation Funds ("the Division"), and the Kentucky Coal Workers' Pneumoconiosis Fund ("the Coal Fund").[2] The Coal Fund is seeking repayment of $256,420.20 in benefits that it has or will pay to Williams.

This action was commenced on November 2, 2016 in Pike Circuit Court. It is one of a number of lawsuits, of which at least fifty are currently pending in state courts in Kentucky and West Virginia. While these suits are brought against both respirator manufacturers and distributors, Williams concedes that the target of these suits are manufacturers such as 3M. Several of those cases have already come to a close, including three where the plaintiffs dismissed or abandoned their claims against the supplier defendants prior to trial, but later than one-year after the action was commenced. *See Hill v. 3M Co.*, No. 05-CI-00589 (Perry Cir. Ct.); *Couch v. Mine Safety Appliances Co.*, No. 10-CI-00155 (Knott Cir. Ct.); *Collins v. 3M Co.*, No. 10-CI-00176 (Knott Cir. Ct.). In one case, *Overbee v. 3M Co.*, No. 16-CI-313 (Knott Cir. Ct.), trial was scheduled within one-year of commencement. At trial, however, the plaintiff argued that MSC was, at most, one percent at fault for his injuries and the jury ultimately assigned them zero liability.

Invoking its status as a foreign defendant, 3M has repeatedly attempted to remove these actions to federal court. Most recently, 3M removed two respirator cases to this Court, arguing that the Supplier Defendants were fraudulently joined. *See Hoskins v. 3M Co.*, No. 6:17-CV-304-KKC; *Hall v. 3M Co.*, No. 7:18-CV-09-KKC. In a joint Memorandum Opinion and Order, the Court remanded those cases, finding that the plaintiffs had stated colorable claims against the Supplier Defendants. *Hoskins v. 3M Co.*, No. 6:17-CV-304-KKC & No. 7:18-CV-09-KKC, 2018 WL 1040091 (E.D. Ky. Feb. 23, 2018).[3] Additionally, over a decade

---

[2] The Coal Fund is administered by the Kentucky Employers' Mutual Insurance ("KEMI").
[3] The Court also rejected 3M's argument that failure to prosecute or a pattern of dismissing the Supplier Defendants was a basis for fraudulent joinder and declined to sever 3M as a Defendant to retain jurisdiction. *Id.* at *4–5.

2

ago, a number of similar cases involving respirator manufacturers and the supplier defendants were removed to the Western and Eastern Districts of Kentucky, and almost all were remanded.[4]

The events giving rise to removal of this action began in February 2018. First, on February 12, the Pike Circuit Court entered an order substituting the Coal Fund as a Defendant in place of Old Republic Insurance. On March 1, Williams filed a notice of settlement advising that a confidential settlement was reached with MSC. Williams did not disclose the date of the settlement in the notice, but, in an affidavit filed with this Court, his attorney states the claim was settled in principle on February 23 and became official on February 28. That same affidavit attests that, on March 22, KMSC informed Williams that it would file a motion for summary judgment if it was not dismissed from the case. Williams decided that he would dismiss the claims and, on May 4, the Supplier Defendants tendered a proposed agreed order dismissing the claims against them with prejudice. 3M removed this case on May 29, 2018, contending that dismissal of the Supplier Defendants created complete diversity of citizenship.

## II. Standard

Generally, a defendant may remove a civil action brought in state court to a federal district court if the district court has original jurisdiction over the case. 28 U.S.C. § 1441(a). If a case does not involve a federal question, district courts have original jurisdiction only if

---

[4] See, e.g., *Baker v. Minnesota Mining & Mfg. Co.*, No. 03-CV-470 KKC (E.D. Ky. May 26, 2004); *Adams v. Minnesota Mining & Mfg. Co.*, Nos. 4:03-CV-182-M, 4:04-CV-2-M, 2004 WL 718917 (W.D. Ky. Mar. 30, 2004); *Amar v. Minnesota Mining & Mfg. Co.*, No. 4:04-CV-164-M (W.D. Ky. Oct. 19, 2005); *Adams v. Minnesota Mining & Mfg. Co.*, No. 6:04-CV-521–DCR, 2005 WL 1719355 (E.D. Ky. July 22, 2005); *Carr v. Minnesota Mining & Mfg. Co.*, No. Civ.A. 6:05–150–DCR, 2005 WL 1871110 (E.D. Ky. July 22, 2005); *Seward v. Minnesota Mining & Mfg. Co.*, No. 7:05-CV-134–DCR, 2005 WL 1719358 (E.D. Ky. July 22, 2005). The second *Adams* case, 2005 WL 1719355, involved 167 plaintiffs, 162 of whom were remanded.

3

the amount in controversy exceeds $75,000 and there is complete diversity of citizenship—that is, no plaintiff and defendant are citizens of the same state. 28 U.S.C. § 1332(a); 28 U.S.C. § 1441(b)(2); *see Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.L.*, 176 F.3d 904, 907 (6th Cir. 1999). "Diversity of citizenship must exist as to a party both at the time the state action is commenced and at the time the defendant files for removal." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 908 (6th Cir. 1993). Removal on the basis of diversity jurisdiction also requires consent of all defendants. 28 U.S.C. § 1446(b)(2)(A).

Removal of diversity cases is subject to two statutory deadlines. First, if a case is not initially removable, the defendant must file a notice of removal "within 30 days after receipt" of the paper "from which it may be first ascertained that the case . . . has become removable." 28 U.S.C. § 1446(b)(2)(3). Second, removal is subject to an overall deadline of "1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* at § 1446(c)(1).

The burden of establishing jurisdiction falls on the removing party. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2000). And, due to the federalism concerns implicated by removal, "all disputed questions of fact or ambiguities in the controlling . . . state law" must be resolved "in favor of the non removing party." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1996) (alteration in original) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).

III. Analysis

Williams seeks remand on four bases. First, he argues that 3M failed to remove this case within one-year of commencement of the action and that 3M cannot establish that he acted in bad faith to prevent removal. Second, he claims 3M did not remove the case within the thirty-days from the time that it was first apparent the case was removable. Third, he claims

that the Division and the Coal Fund are Kentucky citizens and therefore the case lacks complete diversity. And, fourth, he claims that the Division and the Coal Fund did not consent to removal. On an expedited schedule, 3M has filed a response and Williams has replied. The Court heard oral arguments from the parties on June 15, 2018, during which the parties focused on the issue of bad faith. The Court determines that, based on the evidence currently before the Court, 3M has not met its burden to show bad faith and therefore remand is required pursuant to 28 U.S.C. § 1446(c)(1).

*A. 3M does not seek removal based on fraudulent joinder*

Williams first asserts that this case is controlled by the Court's decision in *Hoskins*, which found that the Supplier Defendants were not fraudulently joined because the plaintiffs stated colorable claims against them. 2018 WL 1040091, at *3. *Hoskins* is not controlling over this case because 3M does not argue that the Supplier Defendants were fraudulently joined.[5] Fraudulent joinder occurs "[w]hen a non-diverse party has been joined as a defendant." *Jerome-Duncan*, 176 F.3d at 907. Because the Supplier Defendants are no longer joined, fraudulent joinder is inapplicable. 3M's basis for removal is that—because the Supplier Defendants have been dismissed, the Coal Fund realigned as a plaintiff, and the Division deemed a nominal party—there is complete diversity.

*B. Bad faith analysis is broader than fraudulent joinder analysis*

In assessing fraudulent joinder, the Court must determine whether "there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." "*Alexander*, 13 F.3d at 949 (quoting *Bobby Jones Garden Apartments, Inc. v.*

---

[5] The only reference 3M makes to fraudulent joinder in its Notice of Removal is its suggestion that the Division "is a nominal party, is not a real party in interest, and/or has been fraudulently joined. (3M Notice of Removal ¶ 23, DE 1.) It does not, however, assert fraudulent joinder with respect to the Supplier Defendants and, in its Response, advances only the argument that the Division is a nominal party.

5

*Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). Thus, "[t]he non-moving party's motive for joining the non-diverse party to the lawsuit is 'immaterial to [the] determination regarding fraudulent joinder.'" *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) (quoting *Jerome–Duncan*, 176 F.3d at 907)).

The Sixth Circuit has not addressed the meaning of bad faith in 28 U.S.C. § 1446(c)(1), but all district courts which have considered the issue appear to agree that the bad faith analysis is necessarily broader than the narrow colorable claim analysis applied by this Court in fraudulent joinder cases. *See, e.g., Larue v. Volkswagen Grp. Of Am., Inc.*, No. 1:17-CV-00001-GNS, 2017 WL 2312480, at *6 (W.D. Ky. May 26, 2017) ("[T]his Court has evaluated claims of bad faith . . . by analyzing whether the non-diverse party was fraudulently joined *or was not dismissed to preclude timely removal*) (emphasis added) (citing *Taylor v. King*, No. 5:12–CV–1, 2012 WL 3257528, at *4–5 (W.D. Ky. Aug. 8, 2012); *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1264 (D. N. Mex. 2014) ("The bad-faith exception . . . has little to do with fraudulent joinder, and the plaintiff's assertion of legally or factually unsound claims does not trigger the exception. Rather, the bad-faith exception prohibits plaintiffs from asserting good claims in bad faith . . . .").

*C. 3M has failed to show bad faith under the two prevailing standards*

A number of district courts have considered "bad faith" claims under 28 U.S.C. § 1446(c)(1) and two prevailing standards have emerged. First, in this circuit, the Western District of Kentucky and Southern District of Ohio have asked "whether the plaintiff engaged in *intentional conduct* to deny the defendant the chance to remove the case to federal court." *Hiser v. Seay*, No. 5:14–CV–170, 2014 WL 6885433, at *4 (W.D. Ky. Dec. 5, 2014) (emphasis added); *see Comer v. Schmitt*, No. 2:15-cv-2599, 2015 WL 5954589, at *4 (S.D. Ohio Oct. 14, 2015) ("To find bad faith, the Court need only determine that Plaintiffs engaged in intentional

6

action or inaction that prevented [the diverse defendant] from otherwise properly filing for removal before the expiration of the one year period."). To prevail under this approach, the defendant must "point specifically to *action or inaction* on the part of the plaintiffs to hold the nondiverse defendants in the suit." *Dutchmaid Logistics, Inc. v. Navistar, Inc.*, No. 2:16-cv-857, 2017 WL 1324610, at *2 (S.D. Ohio April 11, 2017) (emphasis added).

Second, the District of New Mexico has developed a two-part, burden shifting, "active litigation" standard to assess bad faith. "First, the Court assesses whether the plaintiff actively litigated its case against the removal spoiler in state court." *Aguayo*, 59 F. Supp. 3d at 1228–29. If the answer is no, there was bad faith; if it is yes, "that finding creates a rebuttable presumption that the plaintiff acted in good faith." *Id.* The defendant may rebut that presumption on the second prong "with evidence already in the defendant's possession, that the plaintiff kept the removal spoiler in the case to defeat removal; the defendant will not, however, receive discovery or an evidentiary hearing in federal court to obtain such evidence." *Id.* The *Agauyo* standard has been adopted by district courts in West Virginia and Missouri. *See, e.g., Massey v. 21st Century Centennial Ins. Co.*, No. 2:17-cv-01922, 2017 WL 3261419, at *4 (S.D. W. Va. July 31, 2017) *Bristol v. Ford Mtr. Co.*, No. 4:16-cv-01649-JAR, 2016 WL 6277198, at *4 (E.D. Mo. Oct. 27, 2016). Other courts, such as the District of South Carolina, have considered the active litigation as a factor in analyzing bad faith, without utilizing *Aguayo*'s specific two-part burden shifting framework. *See, e.g., Shorraw v. Bell*, No. 4:15-cv-03998-JMC, 2016 WL 3586675, at *6 (D.S.C. July 5, 2016).[6]

---

[6] The Western District of Kentucky and Southern District of Ohio have both explicitly rejected the *Aguayo* framework for public policy reasons, finding that it "has the potential to deter plaintiff from dismissing defendants they realize are not necessary, as well as force plaintiffs to request meaningless discovery to avoid the exception being exercised." *Dutchmaid*, 2017 WL 1324610, at *3; *see Larue*, 2017 WL 2312480, at *6 ("[T]he *Aguayo* analysis seems inappropriate because it would reverse the presumption in favor of remand in cases like this where the plaintiff has a colorable claim against a non-diverse party, but cannot garner expert proof to support the claim and the 'diversity spoiler' does not seek dismissal before the one-year period expires."). In *Aguayo*, the

7

Rather than endorsing either approach as the correct standard, the Court has considered 3M's arguments under both and determined that neither leads to a finding of bad faith.

*1. 3M has not presented evidence of intentional conduct to hold the Supplier Defendants in this case*

Under the intentional conduct approach, 3M has failed to show bad faith by Williams because it has not identified any specific, intentional action or inaction by Williams to hold the Supplier Defendants in this suit. In two cases, *Comer* and *Hiser*, the Southern District of Ohio and the Western District of Kentucky, respectively, found bad faith based on intentional conduct by the plaintiff. In *Comer*, the court found that the plaintiffs engaged in "intentional inaction that prevented" timely removal through a "methodical delay in consummating the settlement agreement." 2015 WL 5954589, at *4. Specifically, the plaintiff joined the diverse defendant three weeks before the one-year deadline and, despite having reached a settlement, held the non-diverse defendants in the case past the deadline to prevent removal. *Id.* The diverse defendant was contacted by counsel for the non-diverse defendant who expressly informed them of the invidious reason for delay. In *Hiser*, the court found bad faith when the plaintiff admitted in their briefing "that they delayed accepting the [settlement] offers in order to retain the non-diverse parties to 'continue the litigation with all parties in the case until the one-year period passed' due to the 'likelihood of attempted removal' and a desire to keep the case in state court." 2014 WL 6885433, at *4. 3M has not presented any evidence similar to that relied upon in *Comey* and *Hiser*. While 3M suggested in its notice of removal that Williams and the Supplier Defendants may have reached a settlement or voluntary dismissal agreement before one-year, Williams has refuted that argument through affidavits regarding the timing of the settlement.

---

District of New Mexico itself recognized many of these concerns. *Aguayo*, 59 F. Supp. 3d at 1277–1282 (discussing "concerns about the bad-faith exception's impact on future litigation").

8

The evidence in this case is more similar to *Larue* and *Dutchmaid*. In *Larue*, the Western District of Kentucky found that a delay in dismissing non-diverse defendants was attributable to "the prolonged state court process" and could not be characterized as bad faith actions. 2017 WL 2312480, at *5. Additionally, the procedural history of the case—a discovery deadline set for twenty-months after the suit was filed—undermined a bad faith finding. *Id.* In *Dutchmaid*, the Southern District of Ohio determined that the actions and inactions which the defendant claimed constituted bad faith were merely "litigation strategy decisions." 2017 WL 1324610, at *3. Those decisions included naming a single non-diverse defendant when there were similarly situated non-diverse defendants who were not named; never moving to compel production of late discovery; and never depositing employees of the non-diverse defendants. *Id.* The court concluded that "a decision to litigate against certain dealers but not others, as well as a decision to pursue extrajudicial methods to resolve discovery disputes do not constitute action or inaction within the requisite meaning of bad faith." *Id.*

Like the diverse defendants in *Larue* and *Dutchmaid*, 3M has not met the high burden of showing that the case becoming removable only after passing of the one-year deadline was due to Williams's intentional action or inaction. Much of the delay of this case is attributable to the discovery deadline—March 2, 2018—which was well beyond the one-year removal deadline. 3M did not oppose that deadline or seek an earlier deadline to increase the likelihood that any settlement between Williams and the Supplier Defendants would occur while the case remained removable.

2. *3M has not shown that Williams failed to actively litigate his claims against the Supplier Defendants*

3M claims that Williams failed to actively litigate his claims against the Supplier Defendants by never developing evidence which would satisfy the onerous requirements for liability under the Kentucky Middleman Statute. Ky. Rev. Stat. § 411.340. He notes that

9

Williams never deposed (or attempted to depose) employees of the Supplier Defendants; never sought third-party discovery from his employers about how they obtained respirators; did not identify a fact witness who could testify the Supplier Defendants sold the respirators or knew of their defects; and did not identify an expert who would supports his claims.[7] He also claims written discovery was not served on the Supplier Defendants until January 26, 2018, the day that the *Hall* case was removed. On that day, identical discovery was served on the Supplier Defendants in more than 50 lawsuits. The Supplier Defendants never responded and Williams and the other plaintiffs' never moved to compel responses.

Williams claims that he has actively litigated his claims against the Supplier Defendants, which is why his claims against MSC were settled. He excuses the lack of discovery against the Supplier Defendants because they had, in an earlier action, provided a list of mine operators to whom they sold respirators, making further discovery efforts against them unnecessary. Instead, Williams claims his counsel has performed investigative work by interviewing his former co-workers. Specifically, he points to the deposition testimony of Chester Hunter who testified that he remembered a vendor named "Mine Services" selling respirators at the mine where he and Williams worked.

While Williams has done only the bare minimum to actively litigate this case, it is enough to avoid removal at this time. Particularly persuasive is the fact that Williams deposed Hunter within the discovery deadline and, by doing so, developed evidence that made a judgment or settlement with MSC more likely. Specifically, Hunter testified that he remembered that one of the mask suppliers was "Mine Services." (Hunter Dep., DE 18.) The Court is concerned, however, by the fact that Hunter is also a client of Williams's counsel yet,

---

[7] In the only respirator lawsuit that did go to trial within the one-year deadline, Darrell Bevis testified that the Kentucky suppliers should have known of the defects. 3M suggests that if Williams intended to litigate against the Supplier Defendants in this case he would have disclosed Bevis as an expert in this case.

10

according to Williams, this information was not available to them to use in settlement negotiations until over a year into this action. Also suspect is Williams's decision not to depose employees of the Supplier Defendants to develop evidence that the Supplier Defendants knew or should have known that the respirators they sold were defective or unreasonably dangerous. At best, Williams counsel only developed half of the necessary case against MSC. This draws into question Williams's decision not to settle or dismiss the Supplier Defendants until shortly before trial and raises the question as to whether any settlement was merely nominal. But, on the record currently before the Court, sufficient evidence to validate these concerns and justify removal based on bad faith is still lacking.

*D. 3M's remaining "bad faith" arguments do not meet the heavy burden for required to overcome a motion to remand*

3M makes three remaining arguments in support of a bad faith finding, one of which the Court must deny as inconsistent with the removal analysis and two of which may have merit, but are currently lacking in evidence to carry 3M's the heavy burden required to overcome Williams's motion to remand.

*1. Placing the burden on Williams to explain why he sued the Supplier Defendants would improperly shift the burden for removal*

3M contends that the Court should find bad faith if there is no plausible explanation for keeping the non-diverse defendants in the case other than preventing timely removal. This argument must be rejected for two reasons. First, it suggests that the burden may be on the plaintiff, when it is well established that the burden of proving jurisdiction falls on the removing party. *Eastman*, 438 F.3d at 549. Second, it belies the maxim that "the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder of necessary parties." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) (quoting 16 J. Moore et al., *Moore's Federal Practice* § 107.12[2][c], p. 107–67 (3d ed. 2005)). Accordingly, "[t]here is nothing wrong with plaintiffs

11

having a preference for state court, nor is there anything inherently invidious or 'bad faith' about using deliberate tactics to defeat federal jurisdiction." *Aguayo*, 59 F. Supp. 3d at 1273.

Williams cites a number of cases in support of this position, but none go as far as requiring the plaintiff to offer an explanation for naming a non-diverse defendant when the defendant has not already presented strong evidence of bad faith. *See Massey*, 2017 WL 3261419, at *7 ("The applicable legal standard asks whether the plaintiff can 'offer any plausible alternative explanation' in response to strong evidence of an intent to manipulate the forum."); *Chavez v. Time Warner Cable LLC,* No. CV 12-5291-RGK (RZx), 2016 WL 7647559, at *8 (C.D. Cal. Jan. 11, 2016) (considering plaintiffs inability to explain deleting claims above the jurisdictional threshold after removal and reasserting them upon remand only after evidence of those amendments was considered); *Patel v. Kroger Co.*, No. 1:13-cv-02901-JOF, 2013 WL 12068988, at *4 (N.D. Ga. 2013) (finding bad faith where plaintiff misled defendant that he was seeking less than $75,000). While one district court has found that "inconsistent statements and implausible explanations have been recognized as evidence of guilty knowledge" in assessing bad faith, in that case plaintiff's claim that more discovery was required for him to settle was *explicitly contradicted* by the fact that he settled without obtaining further discovery. *Forth v. Diversey Corp.*, No. 13–CV–808–A, 2013 WL 6096528, at *4 (W.D.N.Y Nov. 20, 2013).

2. *3M's "pattern and practice" and "implied understanding" arguments fall short of meeting the burden to defeat remand*

3M advances two other theories for removal. First, 3M argues that, looking to other respirator litigation, Williams's counsel has engaged in a pattern and practice of suing non-diverse supplier defendants, failing to pursue these claims, and then dismissing or abandoning the claims after the one-year removal deadline. 3M points to a number of cases as a part of this pattern. In three of these cases, 3M alleges a specific pattern of not pursuing discovery against the supplier

12

defendants, dismissing or abandoning claims against them after one year, and proceeding to trial only against the remaining manufacturer defendant. *See Hill v. 3M Co.*, No. 05-CI-00589 (Perry Cir. Ct.); *Couch v. Mine Safety Appliances Co.*, No. 10-CI-00155 (Knott Cir. Ct.); *Collins v. 3M Co.*, No. 10-CI-00176 (Knott Cir. Ct.).[8] It claims that *Overbee v. 3M Co.*, No. 16-CI-313 (Knott Cir. Ct.) is the "exception that proves the rule." That case was scheduled for trial within a year of commencement and the plaintiffs did not dismiss the Supplier Defendants. Instead, at trial, plaintiff downplayed their role by arguing that MSC was at most one percent at fault and did not oppose a directed verdict sought by KMSC. Williams claims that there is no pattern or practice of dismissing the Supplier Defendants and that the resolution of each case is determined by the strength of the claims against the suppliers.

In this case, the Court finds that the evidence falls short of the high burden on 3M and the strong presumption in favor of remand. Here, there is no evidence that the plaintiffs engaged in intentional acts, over 3M's objection, to drag out discovery and preclude removal.[9]

Finally, 3M claims that Williams's counsel and the Supplier Defendants have an implied understanding or tacit agreement that the claims against them will be dismissed after one-year but

---

[8] 3M also identifies *Hall v. 3M Co.*, No. 16-CI-00100 (Knott Cir. Ct.) and claims that, after this Court remanded the action, the Special Fund, a non-diverse party, withdrew its intervening complaint and claim for subrogation despite the plaintiff having argued to this Court that the Special Fund's presence precluded diversity jurisdiction. The Court did not decide this question when it remanded the case.

[9] The Eastern District of Pennsylvania has considered "pattern and practice" type evidence in two fraudulent joinder cases. *See In re Zoloft*, 257 F. Supp. 3d 717 (E.D. Pa. 2017); *In re Diet Drugs*, 220 F. Supp. 2d 414 (E.D. Pa. 2002). Those cases are distinguishable from the facts currently before the Court. In *In re Diet Drugs*, there was a pattern of naming non-diverse defendants and "never pursu[ing] them to judgment, typically being voluntarily dismissed at some point after the defendants' ability to remove the case has expired." 220 F. Supp. 2d. at 424. Here, in contrast, Williams settled with MSC and asserts that prior plaintiffs have entered into settlements, rather than voluntarily dismissing, supplier defendants. There is no direct evidence on record that these settlements are merely nominal. In *In re Zoloft*, the court found there was no good faith intent to prosecute, even though the plaintiff had colorable claims, based on a failure to seek discovery in that case and prior litigation. 257 F. Supp. 3d at 720. Here, Williams pursued at least some fact-finding against the Supplier Defendants by deposing Hunter.

before trial. 3M points to a circumstantial evidence, most of which has been discussed above. Here, however, 3M has not presented any direct evidence of an understanding between the parties and its circumstantial evidence falls short due to the presumption in favor of remand.

## IV. Conclusion

Accordingly, for the reasons set forth above, the Court finds that 3M has not shown bad faith under 28 U.S.C. § 1446(c)(1). Because this action was removed over one-year after its commencement in state court, remand is required.



Signed By:
Karen K. Caldwell
United States District Judge